# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# (TEXARKANA DIVISION)

| | |
|---|---|
| **GHJ HOLDINGS, LLC,**<br>　　　　　**Relator,**<br><br>　　vs.<br><br>**FISHER & PAYKEL APPLIANCES INC. AND FISHER & PAYKEL APPLIANCES USA HOLDINGS INC.,**<br>　　　　　**Defendants.** | Case No.: 5:11-cv-00073<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR FALSE PATENT MARKING

Relator GHJ Holdings, LLC ("Relator") alleges as follows:

## NATURE OF THE CASE

1. This is an action for false patent marking under section 292 of the Patent Act (35 U.S.C. §292), which provides that any person may sue to recover the civil penalty for false patent marking. Relator brings this qui tam action on behalf of the United States of America.

## PARTIES

2. Relator is a Texas limited liability company with its principal place of business in Texarkana, Texas.

3. Defendant Fisher & Paykel Appliances Inc. is a California corporation with its principal place of business at 5900 Skylab Road, Huntington Beach, CA 90620 and can be served through its registered agent, Graham Church, 5900 Skylab Road, Huntington Beach, CA 90620.

4. Defendant Fisher & Paykel Appliances USA Holdings Inc. is a Delaware corporation with its principal place of business at 5900 Skylab Road, Huntington Beach, CA 90620 and can be served through its registered agent, Graham Church, 5900 Skylab Road, Huntington Beach, CA 90620.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Relator's false marking claims under Title 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendants by virtue of, *inter alia*, Defendants' persistent and continuous contacts with the Eastern District of Texas, including active and regular conduct of business during the relevant time period through their sales in the Eastern District of Texas.

7. This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants have violated Title 35 U.S.C. § 292, and falsely marked, advertised, distributed and sold products in the Eastern District of Texas. Further, on

information and belief, Defendants have sold falsely marked products in competition with sellers of competitive products in the Eastern District of Texas. Such sales by Defendants are substantial, continuous and systematic.

8. Venue is proper in this District under Title 28 U.S.C. §§ 1391(b) and (c) and 1395(a).

## FACTS

9. Defendants have marked and/or continue to mark their products, including, but not limited to, its washing machines and drawer washers collectively referred to as the "Falsely Marked Products" with expired or otherwise inapplicable patents including, but not limited to, U.S. Patent Nos. 4,949,557; 5,040,285; 5,150,589; 5,208,931; 5,266,855; 5,271,116; D400,320; D404,856; D460,224; D458,422; D460,841; D467,691 and D459,853 and Canadian Patent Nos. 1288465; 1317471; 1329235; 1331103; 1331104; 1332434; 1335939, collectively referred to as the "Expired and Inapplicable Patents."

10. Such false marking by Defendants includes marking the Expired and Inapplicable Patents upon, affixing the Expired and Inapplicable Patents to, and/or using the Expired and Inapplicable Patents in advertising in connection with the Falsely Marked Products.

11.   U.S. Patent No. 4,949,557 was filed September 12, 1989 and issued on August 21, 1990.  It expired no later than September 12, 2009.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

12.   U.S. Patent No. 5,040,285 was filed September 26, 1989 and issued on August 20, 1991.  It expired no later than September 26, 2009.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

13.    U.S. Patent No. 5,150,589 was filed June 4, 1991 as a divisional of U.S. Patent No. 5,040,285 and issued on September 29, 1992.  It expired no later than September 26, 2009.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

14.   U.S. Patent No. 5,208,931 was filed August 28, 1990 and issued on May 11, 1993.  It expired no later than August 28, 2010.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

15.   U.S. Patent No. 5,266,855 was filed August 14, 1990 as a continuation of an application filed May 2, 1988 and issued on November 30, 1993.  It expired no

later than May 2, 2008.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

16. U.S. Patent No. 5,271,116 was filed January 13, 1993 as a divisional of U.S. Patent No. 5,208,931 and issued on December 21, 1993.  It expired no later than August 28, 2010.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

17. Canadian Patent No. 1288465 was filed September 15, 1986 and expired September 15, 2006.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

18. Canadian Patent No. 1317471 was filed September 13, 1989 and expired September 13, 2009.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

19. Canadian Patent No. 1329235 was filed March 3, 1987 and expired March 3, 2007.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

20. Canadian Patent No. 1331103 was filed March 4, 1987 and expired March 4, 2007.  Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

21. Canadian Patent No. 1331104 was filed March 4, 1987 and expired March 4, 2007. Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

22. Canadian Patent No. 1332434 was filed September 28, 1989 and expired September 28, 2009. Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

23. Canadian Patent No. 1335939 was filed September 28, 1989 and expired September 28, 2009. Nevertheless, Defendants have marked one or more of the Falsely Marked Products with it after expiration.

24. Defendant has also falsely marked and/or continues to falsely mark the Falsely Marked Products by marking them with a blanket patent list or laundry list of Defendants' patents obtained or applied for includes many inapplicable patents including, but not limited to, U.S. Patent Nos. D400,320; D404,856; D460,224; D458,422; D460,841; D467,691 and D459,853.

25. For example, the Falsely Marked single drawer washer product this list was marked on as seen here:



As an example, however, it is clear as seen below from the picture in U.S. Patent Nos. D400,320 that it does not cover a product with just one opening.



- 7 -
ORIGINAL COMPLAINT

26.     Defendants have falsely marked the Falsely Marked Products after the expiration dates of the Expired and Inapplicable Patents.  For example, Defendants placed the Expired and Inapplicable Patents on Falsely Marked Products by marking them on the packaging of their products.

27.     Defendants have marked the Falsely Marked Products by printing the Expired and Inapplicable Patents on the packaging the Falsely Marked Products.  Such markings could have easily been updated to reflect accurate patent information.  Defendants could have easily remarked their products with correct patents numbers, but decided not to.

28.     It was a false statement for Defendants to mark the Falsely Marked Products with expired or otherwise inapplicable patents.  Defendants knew that the patents were expired or otherwise inapplicable, but nevertheless marked them on their products after it expired in an attempt to deceive the public.

29.     Defendants are large, sophisticated companies.  Defendants have, and/or regularly retain, sophisticated legal counsel.  Defendants have many years of experience applying for patents, obtaining patents, licensing patents, and/or litigating in patent infringement lawsuits.  The patents that Defendants own or have licensed, including the Expired and Inapplicable Patents, were or are important

assets to Defendants and are consistently reviewed and monitored in the course of Defendants' business.

30. The expiration date of a U.S. Patent is not readily ascertainable by members of the public at the time of the product purchase. The patent number itself does not provide members of the public with the expiration date of the patent. Basic information about a patent, such as the filing, issue and priority dates associated with a particular U.S. patent number are available at, for example, the website of the United States Patent and Trademark Office ("USPTO"). However, access to the Internet is necessary to retrieve that information (meaning that a consumer may not have the ability to retrieve the information, especially while he is in a store making a purchasing decision) and even after retrieving that information, it does not always include the expiration date of a patent. Rather, a member of the public must also conduct a burdensome legal analysis, requiring specific knowledge of U.S. Patent laws regarding patent term expiration. Notably, a correct calculation of the expiration date must also account for at least: a) any term extensions granted by the USPTO, which may or may not be present on the face of the patent, and b) whether or not the patent owner has paid the necessary maintenance fees.

31. Defendants knew that a patent that is expired does not cover any product.

32. Defendants knew that it was a false statement to mark the Falsely Marked Products with an expired or otherwise inapplicable patent.

33. Defendants did not have, and could not have had, a reasonable belief that their products were properly marked, and Defendants knew or should have known that the aforementioned patents had expired.

## INJURY IN FACT TO THE UNITED STATES

34. Defendants' practice of false marking is injurious to the United States.

35. The false marking alleged above caused injuries to the sovereignty of the United States arising from Defendants' violations of federal law, specifically, the violation of 35 U.S.C. §292(a). The United States has conferred standing on "any person," which includes Relator, as the United States' assignee of the claims in this complaint to enforce section 292.

36. The false marking alleged above caused proprietary injuries to the United States, which, together with section 292, would provide another basis to confer standing on Relator as the United States' assignee.

37. The marking and false marking statutes exist to give the public notice of patent rights. Congress intended the public to rely on marking as a ready means of

discerning the status of intellectual property embodied in an article of manufacture or design, such as the Falsely Marked Products.

38. Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas that are, in reality, a part of the public domain—such as those described in the Expired and Inapplicable Patents.

39. Congress's interest in preventing false marking was so great that it enacted a statute that sought to encourage private parties to enforce the statute. By permitting members of the public to bring *qui tam* suits on behalf of the government, Congress authorized private persons like Relator to help control false marking.

40. The acts of false marking alleged above deter innovation and stifle competition in the marketplace for at least the following reasons: if an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market; false marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement; and false marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a

patent whose number has been marked upon a product with which a competitor would like to compete.

41. The false marking alleged above misleads the public into believing that the Expired and Inapplicable Patents give Defendants control of the Falsely Marked Products (as well as like products), placing the risk of determining whether the Falsely Marked Products are controlled by such patents on the public, thereby increasing the cost to the public of ascertaining who, if anyone, in fact controls the intellectual property embodied in the Falsely Marked Products.

42. Thus, in each instance where a representation is made that the Falsely Marked Products are protected by the Expired and Inapplicable Patents, a member of the public desiring to participate in the market for products like the Falsely Marked Products must incur the cost of determining whether the involved patents are valid and enforceable.  Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.

43.     The false marking alleged in this case also creates a misleading impression that the Falsely Marked Products are technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

44.     Every person or company in the United States is a potential entrepreneur with respect to the process, machine, manufacture, or composition of matter described in the Expired and Inapplicable Patents.  Moreover, every person or company in the United States is a potential competitor with respect to the Falsely Marked Products marked with the Expired and Inapplicable Patents.

45.     Each Falsely Marked Product or advertisement thereof, because it is marked with or displays the Expired and Inapplicable Patents, is likely to, or at least has the potential to, discourage or deter each person or company (itself or by its representatives), which views such marking from commercializing a competing product, even though the Expired and Inapplicable Patents nothing to prevent any person or company in the United States from competing in commercializing such products.

46.     The false marking alleged in this case and/or advertising thereof has quelled competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

47.     The false marking alleged in this case constitutes wrongful and illegal advertisement of a patent monopoly that does not exist and, as a result, has resulted in increasing, or at least maintaining, the market power or commercial success with respect to the Falsely Marked Products.

48.     Each individual false marking (including each time an advertisement with such marking is accessed on the Internet) is likely to harm, or at least potentially harms, the public.  Thus, each such false marking is a separate offense under 35 U.S.C. §292(a).

49.     Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. §292(b).

50.     For at least the reasons stated in paragraphs 2 to 48 above, the false marking alleged in this case caused injuries to the sovereignty of the United States arising from violations of federal law and has caused proprietary injuries to the United States.

## **CLAIM**

51.     For the reasons stated in paragraphs 2 to 49 above, Defendants have violated section 292 of the Patent Act by falsely marking the Falsely Marked Products with intent to deceive the public.

## **PRAYER FOR RELIEF**

52.     Relator thus requests this Court, pursuant to 35 U.S.C. §292, to do the following:

> A.      enter a judgment against Defendants and in favor of Relator that Defendants have violated 35 U.S.C. §292 by falsely marking products with knowledge that the patents have expired and/or are not applicable for the purpose of deceiving the public;
>
> B.      order Defendants to pay a civil monetary fine of $500 per false marking offense, or an alternative reasonable amount determined by the Court taking into consideration the total revenue and gross profit derived from the sale of falsely marked products and the degree of intent to falsely mark the products, one-half of which shall be paid to the United States and the other half to Relator;

C.  enter a judgment declaring that this case is "exceptional," under 35 U.S.C. §285 and award in favor of Relator, and against Defendants, the costs incurred by Relator in bringing and maintaining this action, including reasonable attorneys' fees;

D.  order that Defendants, their officers, agents, servants, employees, contractors, suppliers, and attorneys be enjoined from committing new acts of false patent marking and be required to cease all existing acts of false patent marking within 90 days; and

E.  grant Relator such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

53.  Relator demands a jury trial on all issues so triable.

Dated: March 9, 2011                    Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  randall@glgnow.com
Christopher Johns
  Texas Bar No. 24044849
  chris.johns@glgnow.com
Christopher A. Honea
  Texas Bar No. 24059967
  chris.honea@glgnow.com

GARTEISER LAW GROUP
44 North San Pedro Road
San Rafael, California 94903
[Tel.] (415)785-3762
[Fax] (415)785-3805

**ATTORNEYS FOR GHJ HOLDINGS, LLC**